JOANN ERZRUMLY, a Minor, by Anwar Erzrumly, her Father and Next Friend, Plaintiff-Appellant, *v.* DOMINICK'S FINER FOODS, INC., *et al.*, Defendants-Appellees.

First District (5th Division)    No. 62990

Opinion filed June 24, 1977.

Peter N. Apostal, of Mintz & Raskin, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Joseph A. Camarra and Stanley J. Davidson, of counsel), for Coca-Cola Bottling Company of Chicago.

Sam L. Miller, Ltd., of Chicago (Sam L. Miller, of counsel), for Dominick's Finer Foods, Inc.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff brought this action in strict liability, alleging that two bottles manufactured by Coca-Cola and sold by Dominick's exploded injuring her. After presentation of her case she moved to amend her complaint to include a count based on the theory of *res ipsa loquitur*. The court denied her motion and granted defendants' motion for a directed verdict. On appeal she contends these rulings were erroneous.

At trial the following pertinent evidence was adduced.

*Anwar Erzrumly*

He is plaintiff's father. At about 1 p.m. on Saturday, June 7, 1969, he took his five children, wife, and father to Dominick's Food Store located at 7501 West North Avenue, River Forest, Illinois. There, he purchased several bags of groceries, including a carton of eight 16-ounce bottles of Coca-Cola. The Coca-Cola display was located along the windows by the door, on the west wall of the store. After paying for the groceries, he wheeled them to his car in a shopping cart. He put all the groceries in the trunk and proceeded to drive to his apartment located at Central Avenue near the Eisenhower expressway. It was a "four to ten mile trip, taking from 10 to 15 minutes to drive on the Expressway." He parked in front of his apartment building and removed the groceries from the trunk. The family entered the apartment by the backstairs. There were two flights, of five steps each, leading to their apartment on the second floor. Between the two flights of stairs was a landing. His four daughters preceded him

up the stairs, each carrying a package and waited on the second floor landing. When he was a few steps from the top of the stairs, he heard a loud sound like an "over inflated soccerball that had blown" and then screaming by the girls. He ran up the few remaining steps and saw that his daughter Joann's leg was "slashed." He also saw broken Coke bottles on the floor, but does not remember how many. On the way to the hospital, Joann told him that "the bottle had exploded."

On cross-examination he stated that the Coke was one of the first things he put in his shopping cart. He noticed nothing unusual about the carton of Coke. He also put his groceries for the rest of the week in the same cart. It took about one hour to shop. When read a portion of his deposition in which he said that Joann carried the Coke from the store to the car, he said he did not remember this answer, and that if that was his answer, he must have misunderstood the question. Besides groceries, he also had a spare tire and a jack in his trunk.

He further stated that there is a flight of stairs leading to the first floor of his apartment building. Thus, they had to climb three flights of stairs, not two. Joann carried the Coke from the car up to the apartment.

On redirect examination he testified that nothing in the trunk could have smashed against the bottles, because he placed all the packages neatly inside the trunk. Nothing was damaged during the ride. He cannot recall if he placed any items on top of the Coke while shopping.

*Dawn, Wendy, and Linda Erzrumly*

They accompanied their father to Dominick's. When they arrived home from the store, they helped carry packages upstairs. Joann carried the carton of Coke. Dawn went up the stairs first, followed by Linda, Wendy, and Joann. Dawn, Wendy, and Linda waited at the apartment door for their father. When Joann was one step from the second floor landing she placed the carton of Coke on the landing. After she stood up the bottles exploded. Linda actually saw the explosion. Dawn and Wendy did not. All three girls heard the explosion. Wendy heard a loud noise like a "bicycle tire pop." Linda said it sounded like a "big balloon popping." After the explosion there was glass and Coke on the floor.

*Joann Erzrumly on her own behalf*

She was six years old when this incident occurred. When they arrived home from Dominick's her father took the carton of Coke out of the trunk of the car and placed it on the ground. She picked it up with her right hand and started up the back stairs. When she was one step below the landing, she placed the carton of Coke on the landing. She stood up and the bottles exploded. It made a loud sound like a "wheel or something [exploding]." She felt something ripping the skin on her left leg.

*Lucille Grande*

She owned the building the Erzrumlys lived in at the time of this

incident. On the day in question, she heard a noise "like a tire [popping]." Then, she heard children screaming and crying. She went upstairs and found "glass all over." She swept up the glass and threw it in the garbage.

*Dominic Di Pinto, M.D.*

He treated Joann for the cut on her leg. According to his records plaintiff had been carrying a Coca-Cola bottle when it "accidentally dropped" and cut her leg.

*John Portone*

He is presently the store manager at the Dominick's in question. However, on June 7, 1969, he was not employed by Dominick's, although he did work as a clerk at this store from 1965 to 1968. While he worked there, the store was air-conditioned and had a canopy over the front window.

A receiver checks and stamps soft drinks when they arrive. Although the store manager plans the displays and the grocery manager supervises the stacking, the driver from Coca-Cola and his helper build the display. Dominick's employees then refill the display. They transfer bottles from the storeroom to the display by use of six-wheeler trucks.

Frequently customers knock bottles over or against one another. When a bottle falls from a display, an employee of Dominick's takes it to the receiving area, even if it does not break.

*Paul Checkovich*

He is a commercial glass fracture pattern analyst. Since 1947, he has examined thousands of bottles to determine the type of fracture produced by different initiating forces. He has also acted as a consultant in approximately 600 lawsuits involving broken bottles.

In response to a hypothetical question based on the facts set forth above, he stated that in his opinion the bottles broke because they were defective. However, the defect "could be [due] to any one of a hundred things", such as a bruise, a capping crack, or a stone in the bottle. If a bottle contains a defect the pressure inside will cause the bottle to break.

On cross-examination he acknowledged that he had never examined the bottles or photographs of the bottles involved in this case. Nor did he know the history of these bottles. He further admitted he did not know either the cause of the defect or the specific nature of the defect. He acknowledged that it could have occurred at the time of manufacture or anytime after. However, he had "no idea" as to when it occurred.

Following oral argument the court denied plaintiff's motion to amend and granted defendants' motions for a directed verdict on the grounds that plaintiff had failed to prove that the bottles contained a specific defect and that the defect existed when it left defendants' control.

OPINION

Plaintiff contends that the trial court erred when it denied her motion to

amend her complaint to include a count based on the theory of *res ipsa loquitur*.

■■ Parties do not have an absolute right to amend. Rather, the decision rests in the sound discretion of the trial court. (Ill. Rev. Stat. 1975, ch. 110, par. 46(1); *Hassiepen v. Marcin* (1974), 22 Ill. App. 3d 433, 435, 318 N.E.2d 162, 164.) Here, plaintiff did not present the proposed amendment to the trial court, nor did she incorporate it into the record on appeal. Consequently, we are unable to review the soundness of the trial court's ruling, and must assume that the denial of plaintiff's motion was not an abuse of the court's discretion. *Lowrey v. Malkowski* (1960), 20 Ill. 2d 280, 285, 170 N.E.2d 147, 150, *cert. denied* (1961), 365 U.S. 879, 6 L. Ed. 2d 191, 81 S. Ct. 1029.

Plaintiff also contends that the court erred when it directed a verdict in favor of defendants.

In *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 574, 357 N.E.2d 449, 452, our supreme court eased plaintiff's burden of proof in a strict liability case by holding that "[a] *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed 'to perform in the manner reasonably to be expected in light of [its] nature and intended function.' (See, Annot., 51 A.L.R.3d 8 (1973); Rheingold, *Proof of Defect in Product Liability Cases*, 38 Tenn. L. Rev. 325, 337 (1971).)"

■■ Plaintiff is not required to prove a specific defect. (*St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 298 N.E.2d 289.) Instead she may prove her case inferentially by establishing that the product malfunctioned and by excluding other reasonable causes of the malfunction. (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449.) Although plaintiff need not disprove every alternative cause of her injury (*Spotz v. Up-Right, Inc.* (1972), 3 Ill. App. 3d 1065, 280 N.E.2d 23), liability may not be based on mere possibility (*Shramek v. General Motors Corp.* (1966), 69 Ill. App. 2d 72, 216 N.E.2d 244). The test to be applied is whether the circumstances shown were such as to justify an inference of probability as distinguished from mere possibility. (*Larson v. Thomashow* (1974), 17 Ill. App. 3d 208, 224, 307 N.E.2d 707, 720; *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 298 N.E.2d 289.) Obviously, this decision must be made on a case by case basis depending on the circumstances of the accident and the type of product involved. See Annot., 51 A.L.R.3d 8 (1973); Rheingold, *Proof of Defect in Product Liability Cases*, 38 Tenn. L. Rev. 325 (1971).

In *Tweedy* plaintiff was injured when the brakes on his automobile failed. The car had approximately 7,500 miles on it. Plaintiff produced no evidence of a specific defect. However, he did present evidence that the

weather was clear, that the roads were dry, and that he was driving carefully. Further, he established that the brakes had been inspected by defendant at 0 and 6,000 miles and that they had not been worked on since the car was manufactured. Because plaintiff eliminated the other reasonable causes of the accident, the court held that the mere malfunction of the brake system was sufficient to raise the inference that the accident was caused by a defect traceable to defendant.

In the instant case, just as in *Tweedy*, plaintiff could not pinpoint the specific defect. Instead, she attempted to prove her case inferentially by: (1) producing evidence that the bottle malfunctioned, and (2) negating abnormal use or other reasonable secondary causes of the malfunction. See *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449; *Bollmeier v. Ford Motor Co.* (1970), 130 Ill. App. 2d 844, 265 N.E.2d 212.

In considering the evidence supporting plaintiff, *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, requires that we view all the evidence in an aspect most favorable to her and decide if it so overwhelmingly favors defendants that no contrary verdict could ever stand.

Here, plaintiff did produce evidence that the bottle broke. Several witnesses testified they heard a noise that sounded like an explosion. In addition, plaintiff's expert testified that in his opinion the bottle had a defect at the time it broke. However, even reviewing the evidence under the standard set forth in *Pedrick* we find that plaintiff failed to exclude other reasonable causes of the bottle exploding as required by *Tweedy*.

Plaintiff's expert admitted he had "no idea" when the defect occurred. Further, he acknowledged the defect "could be [due] to any one of a hundred things" including improper handling by plaintiff and her family. Nonetheless, plaintiff failed to exclude her or her family's negligence as the cause of the defect. No one testified regarding the handling of the bottles while plaintiff and her family were in the store. Similarly, the testimony of plaintiff's witnesses regarding the handling of the bottles after they left the store is at best incomplete. During the time plaintiff and her family had the bottles in their possession any number of things could have occurred causing one or more of them to explode.

Plaintiff's case against defendant Coca-Cola is even weaker. The store manager's testimony failed to eliminate or significantly narrow the probability that someone other than Coca-Cola caused the defect.

■■ Accordingly, because plaintiff offered no evidence of a defect attributable to any defendant and because she did not eliminate other reasonable causes of the bottle breaking we must affirm the trial court's directed verdict in favor of defendants. See *Miller v. General Telephone Co.* (1975), 29 Ill. App. 3d 848, 330 N.E.2d 573.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.