LETICIA CAVAZOS, Plaintiff-Appellant, *v.* E. W. BLISS COMPANY, Defendant-Appellee.

First District (1st Division)  No. 77-1511

■■■

Opinion filed July 30, 1979.—Rehearing denied September 17, 1979.

454

John C. Ambrose, of Chicago, for appellant.

Baker and McKenzie, of Chicago (Francis D. Morrissey, Harry J. O'Kane, and Daniel J. Cheely, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Leticia Cavazos (plaintiff) brought this action to recover damages for injuries she sustained while operating a punch press owned by her

employer, Service Stampings of Illinois, Inc. (employer), and manufactured by E. W. Bliss Company (defendant). Plaintiff sought recovery upon a theory of strict liability. Plaintiff appeals from judgment entered on the jury verdict in favor of defendant.

On appeal plaintiff contends that the trial court erroneously: (1) denied plaintiff's motion to strike the affirmative defense of assumption of risk; (2) instructed the jury on the law of assumption of risk; (3) refused to enter an order on plaintiff's motion in limine and allowed the defendant to establish that the duty to install safety devices rested with the employer; (4) allowed improper impeachment of plaintiff; (5) refused to allow plaintiff to introduce evidence of post-occurrence modification of the punch press; and (6) during voir dire refused to question prospective jurors concerning their interest in a corporation which allegedly was the sole shareholder of defendant.

In September of 1964 plaintiff's employer purchased a 22-ton punch press from defendant. The employer had several punch presses on its premises and was familiar with the presses manufactured and sold by defendant. The press was multifunctional, capable of performing a variety of operations. It was an open back inclinable press with a full revolution clutch. The press was sold without a means of activation and was therefore nonfunctional and inoperable when it left defendant's control. After the purchase, the employer installed a Schrader two-hand control, dies, a bolster plate and a light. The press could then be activated only by depressing both hand levers simultaneously. The employer specifically chose not to install an anti-tie-down device on the Schrader control system because of the many one-handed operations which occurred at its plant.

A tie-down device holds down one hand lever so that only the other lever need be pushed to activate the press. An anti-tie-down device precludes the operation of the press without both levers being simultaneously depressed for each revolution.

In April or May of 1969 plaintiff was hired by the employer as a punch press operator. Plaintiff is from Mexico and at all relevant times neither spoke nor read English. All of her testimony referred to here was given through an interpreter. She was 15 years old, although she gave her age as 18 to gain employment. She had never previously operated a punch press, but she was specifically hired as a punch press operator. She performed these operations for 40 hours a week.

Plaintiff testified that she was instructed on the use of a punch press by a Spanish-speaking foreman, Ivan Borriga. She was aware that certain co-workers tied down one of the hand levers to permit faster work. Ivan Borriga had warned plaintiff not to insert a rod to tie down one of the

levers. She remembered Borriga telling her, "If you put a piece of rod in there, you would get into an accident."

During the morning of July 31, 1969, plaintiff operated the press in question without trouble. George Cardenas, a co-worker, requested plaintiff to switch presses with him. Cardenas had a bandage on his right hand and was therefore finding it difficult to operate his press. Cardenas had been operating his press with the right-hand lever tied down for about a month. He did this by insertion of a metal rod "shaped like a pencil" into the right-hand lever of his machine. His press could then be activated simply by depressing the left-hand lever. Plaintiff was familiar with this method used by Cardenas.

After lunch plaintiff changed presses with Cardenas. She testified that before she sat down at the machine she did not know that the right-hand lever had been "tied down" by insertion of the metal rod. She stated that she saw the rod as soon as the accident happened. Plaintiff also testified she could not state how often she had used the press upon which the mishap occurred because the employees were constantly rotating their use of machines.

Plaintiff further testified that when she commenced work her right hand was under the ram and the left hand pushed the left lever down. This caused the ram immediately to descend on her right hand. Plaintiff also testified that this accident occurred between 2 and 3 p.m. However, in her discovery deposition she stated she had been working at the machine approximately 2 hours before the accident occurred.

Plaintiff's expert engineer, Irving Hazard, testified he had viewed the punch press in question in 1977. The press had separate right- and left-hand controls. This required that both levers be depressed simultaneously to operate the machine. Hazard testified that there are two safety methods which are generally used with this type of punch press. One is a point of operation guard which involves a barrier between the operator and the descending ram. The other is a point of operation device which is a two-hand control requiring the operator simultaneously to have one hand on each control to operate the press.

Hazard further testified that a point of operation device is a safety device, but only if the levers or one of them cannot be tied down. When the punch press was sold in 1964, anti-tie-down devices were available. Hazard stated further in his opinion the punch press involved herein was unreasonably dangerous at the time of manufacture and when introduced into the stream of commerce.

Ralph Barnett testified as an expert for the defendant. Barnett stated that upon examining this press in 1975 he found it to be a full-revolution clutch equipped with a custom-modified Schrader control system. It did not have an anti-tie-down device, but one could have been incorporated

into the system. Barnett further testified there is no universal guard for this punch press because the multifunctional nature of the press makes it impossible to invent one single safety device. He stated that the two-hand Schrader control installed on this press qualified as a point of operation device because the speed of the press precluded the operator from getting his hands off the levers and under the ram during its descent. He concluded that in his opinion, this punch press was not unreasonably dangerous when sold.

Plaintiff filed her complaint in 1972. The affirmative defense was filed April 7, 1977, during trial and at the close of plaintiff's case. On April 11, 1977, during trial, plaintiff filed a motion to strike said defense on the basis that she was surprised and the defense was not well pleaded.

The gist of plaintiff's argument is that the defense was not timely filed. However, section 46(1) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46(1)) provides:

"At any time before final judgment amendments may be allowed on just and reasonable terms, * * * changing the cause of action or defense or adding new causes of action or defenses * * *."

■■■ This does not mean, however, that parties have an absolute right to amend. (*Erzrumly v. Dominick's Finder Foods, Inc.* (1977), 50 Ill. App. 3d 359, 363, 365 N.E.2d 684.) "Permission to file an amendment rests within the discretion of the trial court and its rulings will not be disturbed on review unless its discretion has been manifestly abused." (*Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill. App. 3d 671, 674, 306 N.E.2d 498.) Furthermore, judicial and legislative policies favor allowance of amendments to pleadings. (See *Genteman v. Saunders Archery Co.* (1976), 42 Ill. App. 3d 294, 300, 355 N.E.2d 647, *appeal denied* (1977), 65 Ill. 2d 577.) In the instant case, we cannot say the trial court abused its discretion in allowing the amendment. If plaintiff was surprised and unprepared to rebut the proffered affirmative defense, she could have asked for a continuance. She did not. We see no abuse of discretion.

■■ However, in our opinion, the affirmative defense filed by defendant is conclusory and not well pleaded. The affirmative defense stated:

"The plaintiff assumed the risk of using the power press referred to in the complaint with one of the hand controls 'tied down'."

This is a pure legal conclusion. No facts are stated to support the elements of the defense of assumption of risk. The pleading of conclusions alone will not suffice to supply the essential factual allegations upon which the defense must be based. (See *Van Dekerkhov v. City of Herrin* (1972), 51 Ill. 2d 374, 282 N.E.2d 723; *Newby v. Board of Education* (1977), 53 Ill. App. 3d 835, 836, 368 N.E.2d 1306, *appeal denied* (1978), 67 Ill. 2d 593; *Haas v. Mid-America Fire & Marine Insurance Co.* (1976), 35 Ill. App. 3d

458

993, 998, 343 N.E.2d 36, *appeal denied* (1976), 63 Ill. 2d 551.) We conclude that the affirmative defense was not well pleaded. It should have been stricken with leave to amend.

Plaintiff next contends the trial court erroneously instructed the jury on the law of assumption of risk. Defendant submits that this issue is not properly before this court as plaintiff failed adequately to preserve specific objections to said instruction in her post-trial motion.

It is correct that specific objections to an instruction must be presented in the conference on instructions, post-trial motion, and the record. (*Barrett v. Fritz* (1969), 42 Ill. 2d 529, 532, 248 N.E.2d 111.) The report of proceedings filed herein indicates that at the conference plaintiff objected to defendant's instruction on assumption of risk (defendant's Instruction No. 9), on the grounds that the introduction of the term "ordinary care" into the instruction converted it into one of contributory negligence. Contributory negligence is not a defense to an action based on strict product liability. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 426, 261 N.E.2d 305.) The record shows that in her post-trial motion plaintiff renewed her contention that the instruction was erroneous and indicated the instruction was defendant's No. 9.

In our opinion, plaintiff adequately preserved her objection. (See *Barrett*, 42 Ill. 2d 529, 533.) We find *Sny Island Levee Drainage District v. Meyer* (1963), 27 Ill. 2d 530, 537-38, 190 N.E.2d 356, cited and relied upon by defendant, distinguishable. In that case it does not appear that defendants raised any point on the instructions at trial. They made a general objection in their post-trial motion to every refused instruction. In the case before us specific objections were raised at the conference so that the trial judge had ample opportunity to correct errors. We see no basis for precluding consideration of the legal merits of the instruction at issue.

Defendant's given Instruction No. 9 is modified Illinois Pattern Jury Instructions, Civil, No. 13.01 (2d ed. 1971) (hereinafter cited as IPI). It states:

"The defendant has raised the affirmative defense that the plaintiff assumed the risks of injury from the dangers which the plaintiff contends caused her injury. To prove that defense, the defendant has the burden of proving each of the following propositions:

First, that the plaintiff was to participate in activities which exposed her to the risk of injury, of which she has complained.

Second, that the dangers involved were the dangers which ordinarily accompany the activities contemplated.

Third, that the plaintiff knew these dangers existed and realized the possibility of injury from them or, in the exercise of ordinary

care, would have known the dangers existed and realized the possibility of injury from them.

Fourth, that some one or more of these dangers were the cause of plaintiff's injuries.

If you decide that each of these propositions has been proved, then your verdict should be for the defendant. If, on the other hand, you decide that any of these propositions has not been proved, then the defendant has not proved the affirmative defense of assumption of the risk."

The trial court also gave defendant's Instruction No. 10 which defines ordinary care as that which a reasonably careful person would use under similar circumstances. Plaintiff tendered and the trial court refused Instruction No. 13 which reads in relevant part:

"In this case, defendant has asserted the affirmative defense of assumption of the risk of injury from use of the punch press.

As to the defense of assumption of risk of injury by the plaintiff from the use of the punch press, the defendant has the burden of proving each of the following propositions:

First, that the plaintiff knew of the existence of a condition, to wit: the punch press contained no point of operation safety device or contained no warning, which rendered the punch press unreasonably dangerous;

Second, the plaintiff appreciated the danger involved in the use of the punch press;

Third, that such use of the punch press after knowledge of such condition and appreciation of the danger was voluntary and unreasonable;

Fourth, that such assumption of risk proximately caused the plaintiff's injury.

In determining whether the defense of assumption of the risk of injury from use of the punch press has been proved, you should take into consideration the plaintiff's age, experience, knowledge, and understanding; and the obviousness of such condition and the danger involved."

Although we do not totally agree with the language used in this instruction, to wit: "that such assumption of risk proximately caused the plaintiff's injury," the entire instruction is a close approximation of the legal definition of assumption of risk in a products liability case.

At the time of this trial the present IPI instruction on assumption of risk in a products case (IPI Civil No. 400.03 (1977 Supp.)) was not available to the trial court. Plaintiff's brief states that her attorney made a copy of the proposed new instruction available to the trial court. We find no

support for this statement in the record or in the report of proceedings. The notes and comment on this new instruction make it abundantly clear that preexisting IPI Civil No. 13.01 (pertaining to contractual relationships) and No. 13.02 (pertaining to employer-employee relationships) "are not to be used in a strict liability case." (IPI Civil 22 (1977 Supp.).) The authorities cited in support of this statement were available to counsel and to the court at trial of the instant case.

In *Sweeney v. Max A.R. Matthews & Co.* (1970), 46 Ill. 2d 64, 69, 264 N.E.2d 170, the supreme court stated that IPI Civil No. 13.01 is limited in use to cases involving a contractual relationship. Thus, the court held use of this instruction on the issue of assumption of risk in a products liability case was misleading and incorrect. It based this decision, in part, on the fact that the instruction referred to dangers which would "ordinarily" accompany the activities undertaken by plaintiff. "The foundation of a product-defect cause of action based on strict liability in tort is that the plaintiff's injury resulted from a condition of the product which rendered it 'unreasonably' dangerous." *Sweeney*, 46 Ill. 2d 64, 69; see also *Pyatt v. Engel Equipment, Inc.* (1974), 17 Ill. App. 3d 1070, 1076, 309 N.E.2d 225, *appeal denied* (1974), 56 Ill. 2d 591.

Additionally, in *Williams*, 45 Ill. 2d 418, 430, the supreme court recognized that assumption of risk is an affirmative defense which bars recovery in a strict liability action. Furthermore, the test to be applied in determining whether a plaintiff has assumed the risk of using a product known to be dangerously defective is fundamentally a subjective test. The plaintiff's own "knowledge, understanding and appreciation of the danger * * * must be assessed, rather than that of the reasonably prudent person." *Williams*, 45 Ill. 2d 418, 430.

In *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 149, 379 N.E.2d 281, assumption of risk was defined by the supreme court as a bar to recovery in strict liability cases "only if the plaintiff is aware of the product defect and voluntarily proceeds in disregard of the known danger." The supreme court further stated, "assumption of risk is an affirmative defense interposed against a plaintiff who voluntarily exposes himself to a specific, known risk, not a preclusion of recovery against a plaintiff whose occupation inherently involves general risks of injury." *Court*, 72 Ill. 2d 141, 149.

Defendant's given Instruction No. 9 instructed the jury to consider dangers which ordinarily accompany plaintiff's work. This is a direct contravention of the principles expressed in *Sweeney* and *Pyatt*. This given instruction also told the jury to consider whether plaintiff, "in the exercise of ordinary care, would have known the dangers existed." This statement is entirely erroneous in view of the requirement that a subjective test is to be applied in determining this issue (*Williams*, 45 Ill.

2d 418, 430), and the further requirement of actual knowledge by plaintiff of the risk which was a proximate cause of her injury (*Court*, 72 Ill. 2d 141, 149). It follows necessarily that defendant's given Instruction No. 9 misstated the law on assumption of risk. It was reversible error for the trial court to give this instruction over the specific objection of plaintiff.

In view of the conclusion thus reached it is not necessary for us to consider any of the remaining contentions raised by plaintiff. For these reasons the judgment appealed from is reversed and the cause is remanded to the circuit court for further proceedings consistent with the principles above expressed.

Reversed and remanded with directions.

McGLOON and CAMPBELL, JJ., concur.