KELLY, and another, Plaintiffs-Appellants, v. HARTFORD CASUALTY INSURANCE COMPANY, Defendant-Respondent.†

Supreme Court

*No. 77-531. Submitted on briefs November 1, 1978.—*
*Decided November 28, 1978.*
(Also reported in 271 N.W.2d 676.)

---

† Motion for reconsideration denied, with costs, on January 30, 1979.

For the appellants the cause was submitted on the brief of *James H. Taylor* and *Benson & Taylor* of Siren.

For the respondent the cause was submitted on the brief of *John W. Fetzner, Gloria O'Connell Sonnen* and *Law Offices of John W. Fetzner, S. C.,* of Hudson.

COFFEY, J.   This is an appeal of a medical malpractice action in which the trial court directed verdict for the defendant. The plaintiff claims to have suffered injury when a nurse negligently administered an enema by not allowing the plaintiff to enter into a proper position before the enema tube was inserted because she was in a hurry.

On July 5, 1975, the seventy-five year-old plaintiff entered Community Memorial Hospital in Spooner complaining of lower back pain. On July 16, 1975, Dr. Rudolf Matzke, the plaintiff's attending physician, ordered an intravenous pyelogram. This procedure is commonly known as a lower GI series examination which includes the bowel, a part of the lower intestinal tract. Before the x-ray procedure is performed, it is required that one or more soap suds enemas are used to clear the bowel.

Mrs. Kelly claims that she was injured during the administration of the enema. Mrs. Kelly states that the nurse was in a hurry and that the plaintiff experienced no pain when the enema tube was inserted, but as the liquid began to flow into the rectum it felt like she was being pinched in the rectal region.

The same evening, the duty nurse discovered a sore to the plaintiff's rectal area which resembled a bruise. On July 19th Dr. Matzke examined the plaintiff and concluded the bruise was most likely caused by the enema. Subsequently, a large hematoma developed in the rectum which required surgical removal. Evidence was received at the trial that Mrs. Kelly had a history of anal diseases. In January, 1969 a proctoscopic examination revealed considerable evidence of hemorrhoid problems. In May, 1975 examinations indicated the plaintiff was suffering

from inflamed hemorrhoids and anal irritation caused by torn mucus linings.

The respective litigants stipulated to the acceptance at trial of the deposition of the treating physicians and surgeons, Dr. Matzke and Dr. Erickson, while Dr. Bishmu Choudhari, the general surgeon who performed the rectal surgery, testified in person at trial. The medical testimony is reviewed in the course of this opinion.

There are two issues on appeal:

1. Whether sufficient evidence was presented to warrant the submission of a *res ipsa loquitur* instruction to the jury?

2. Whether the facts of this case require this court to grant a new trial in the interests of justice pursuant to sec. 251.09, Stats? (Renumbered sec. 751.06 by Laws of 1977, ch. 187, sec. 76, effective August 1, 1978.)

In *Fehrman v. Smirl*, 20 Wis.2d 1, 121 N.W.2d 255 (1963), this court authorized the application of *res ipsa loquitur* to medical malpractice cases. Where there is an absence of testimony regarding a specific vehicle of negligence, the doctrine of *res ipsa loquitur* permits a jury to draw an inference of general negligence from the circumstantial evidence. Prosser, *Law of Torts* (2d ed.) §42, p. 202. Before a *res ipsa loquitur* instruction can be given to a jury, the evidence must conform to these requirements:

"(1) The event in question must be of the kind which does not ordinarily occur in the absence of negligence; and (2) the agency or instrumentality causing the harm must have been within the exclusive control of the defendant." *Trogun v. Fruchtman,* 58 Wis.2d 569, 590, 207 N.W.2d 297 (1973).

As a general proposition the doctrine of *res ipsa loquitur* may be invoked in medical malpractice actions where a layman is able to say as a matter of common

knowledge that the consequences of the professional treatment are not those which ordinarily result if due care is exercised. *Fehrman, supra* at 22.

Wisconsin has additionally adopted the position that an instruction embodying the principle of *res ipsa loquitur* may be grounded on expert medical testimony in a malpractice case. *Fehrman, supra* at 25; *Burnside v. Evangelical Deaconess Hospital,* 46 Wis.2d 519, 523, 175 N.W.2d 230 (1970); *Mercurdo v. County of Milwaukee,* 82 Wis.2d 781, 786, 264 N.W.2d 258 (1978). The *res ipsa loquitur* standards are satisfied if the testimony and the medical records taken as a whole would support the inference of negligence or if direct testimony is introduced that the injury in question was of the nature that does not ordinarily occur if proper skill and care are exercised.

The plaintiff claims that it is within the common knowledge of a layman that rectal hematoma will not ordinarily occur from the administration of an enema except in circumstances where the proper medical skill and care have not been exercised. Reliance is placed on *Davis v. Memorial Hospital,* 58 Cal.2d 815, 26 Cal. Rptr. 623, 376 P.2d 561 (1962) wherein it was alleged that an enema caused the patient to suffer a perirectal abscess and a resulting fistula. Without reaching a decision on causation, the California Supreme Court concluded that the plaintiff was entitled to a *res ipsa loquitur* instruction, noting:

"Although there was no expert testimony as to the probability of negligence in such a situation, it is a matter of common knowledge among laymen that the giving of an enema is not ordinarily harmful unless negligently done." *Davis, supra* at 562.

We do not find the *Davis* Case to be persuasive precedent in support of the plaintiff's position. First, the *Davis*

Case is factually distinguishable from the case at bar. In *Davis,* the plaintiff had undergone a prostatic massage which had revealed no abnormalities. Mrs. Kelly has a history of hemorrhoid problems dating back to 1969 and confirmed by examination in May, 1975, one month before the alleged act of negligence. Further, in *Davis,* four attempts were made to insert the tube, the plaintiff testifying that with each attempt a "cutting," "scratching" or "tearing" sensation was experienced. Mrs. Kelly testified there was no discomfort during the insertion of the tube. Rather, only after the liquid began to flow did she experience a pinching sensation in the rectal area.

Second, California permits a *res ipsa loquitur* instruction based upon common knowledge unless:

". . . the facts clearly show that the procedure is so *unusual and complex* that the jury could not rest their understanding of it upon their common knowledge. . . ." *Bardessono v. Michels,* 91 Cal. Rptr. 760, 478 P.2d 480 (1971). (Emphasis supplied.)

This is not the law in Wisconsin. An application of the doctrine based on common knowledge is allowed only when the occurrence clearly "speaks for itself." *Burnside v. Evangelical Deaconess Hospital, supra.* We have previously held that the occurrence "speaks for itself" and that *res ipsa loquitur* could be applied where a patient had undergone dilatation and curettage surgery and returned from the operative procedure with second degree burns on her posterior, an area not involved in the operation. The court held that a layman could conclude as a matter of common knowledge that burns in an area unassociated with the operation ordinarily do not result if due care is exercised. *Beaudoin v. Watertown Memorial Hospital,* 32 Wis.2d 132, 145 N.W.2d 166 (1966).

In *Burnside* an unsuccessful attempt to catheterize the patient resulted in his passing blood in his urine. In re-

fusing to allow an instruction based on common knowledge the court stated:

"While a layman might speculate upon the skill and competence of the doctors who attempted the catheterization, we do not think this procedure is so well known and understood by lay people that it permits a jury to infer negligence on the part of the doctors from any fact of common knowledge possessed by laymen." *Burnside v. Evangelical Deaconess Hospital, supra* at 526.

Wisconsin has refused to allow a *res ipsa loquitur* instruction resting on common knowledge, *inter alia,* for injury to a sphincter valve during a prostate operation. *Fehrman, supra;* drug hepatitis, *Trogun, supra;* development of gangrene subsequent to amputation of the hand at the wrist, *Shurpit v. Brah,* 30 Wis.2d 388, 141 N.W.2d 266 (1966); erroneous diagnosis of gallstones, *Francois v. Mohrohisky,* 67 Wis.2d 196, 266 N.W.2d 470 (1975).

In *Cramer v. Theda Clark Memorial Hospital,* 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969) and *Payne v. Milwaukee Sanitarium Foundation,* 81 Wis.2d 264, 275, 260 N.W.2d 386 (1977), while not speaking directly to the *res ipsa loquitur* question, the court set forth rules for determining whether expert testimony was required to enable the jury to understand the requisite medical standard of care:

"In establishing the negligence of a hospital the necessity of expert testimony depends upon the type of negligent acts involved. Expert testimony should be adduced concerning those matters involving special knowledge or skill or experience on subjects that are not within the realm of ordinary experience of mankind, and which require special learning, study or experience."

Expert medical testimony introduced at trial leads to the conclusion that based on these particular facts, this is not a proper case for the application of *res ipsa lo-*

*quitur* premised exclusively upon the common knowledge and experience of laymen. Dr. Choudhuri, appearing on behalf of the plaintiff, testified that in this case the administration of an enema is a dangerous procedure requiring special knowledge and training. Based upon this testimony, we cannot hold the injury in question analogous to situations where an instrument is left inside the patient or there is an injury to a part of the patient's anatomy which is not under treatment. Our conclusion is supported by *Hanrahan v. St. Vincent Hospital*, 516 F.2d 300 (8th Cir. 1975) and *George v. City of New York*, 22 App. Div.2d 70, 253 N.Y.S.2d 550 (1964) where it was held that whether the application of an enema will cause injury in the absence of negligence is not a matter of common knowledge.

A review of the expert testimony also reveals that the *res ipsa loquitur* instruction was not required because there was no direct medical testimony to prove that the injury was of a nature that ordinarily occurs except for the lack of proper skill and care as to the enema procedure in question. As concluded earlier in this opinion, this medical information is not within the realm of the common knowledge and experience of laymen. Dr. Choudhuri testified that in this factual situation where the plaintiff suffered from pre-existing hemorrhoidal disease, the administration of an enema is a dangerous procedure and that training for its proper use was necessary. He also stated that there were two possible results from this procedure. The enema may be uneventful or it could cause injury to the mucus membrane. The doctor concluded that injury to the mucus membrane is more likely to occur if rectal irritation is already present. In any event, when a series of examinations are conducted such as Mrs. Kelly had undergone it would not be unusual for a patient to experience discomfort, soreness and irritation in this area. There is no testi-

mony in the record, including the depositions of Drs. Matzke and Erickson, to support the plaintiff's contention of liability based upon the *res ipsa loquitur* doctrine that the injury Mrs. Kelly suffered would not have occurred except for negligence in the administering of the enema.

Such testimony provides neither direct evidence nor supports the inference that an injury to the rectum in the present situation was of a type which would not ordinarily occur in the absence of negligence. As was stated in *Hanrahan v. St. Vincent Hospital, supra* at 302 and relied upon by respondent:

"Whether the application of an enema in such a manner as to cause a perianal abscess is the type of occurrence which in the ordinary course of things would not happen if reasonable care had been used is in our view a question outside the common experience and competence of laymen and must rest, if at all, upon the testimony of experts. In this regard the plaintiff cites expert testimony that it is highly unusual for a perianal abscess to develop in the place in which his was located. But neither this testimony nor other in the case is probative of the question whether, in the common experience of experts, such an abscess is ordinarily the result of negligence."

The medical testimony does not indicate that the rectal hematoma would be more likely to occur had the nurse been negligent. It was Dr. Choudhuri's opinion that the injury was more likely to occur due to the existing rectal disease and the possibility of inflammation and irritation to the mucus membrane caused by rectal procedures performed on Mrs. Kelly for four successive days. The medical records reveal nothing more than a history of hemorrhoid diseases and the discovery of the wound on the day of the enema. The *res ipsa loquitur* inference fails if such an injurious occurrence is shown to be of such a nature as can ordinarily happen despite proper medical care and treatment.

138

This brings us to a consideration of the second element required for a *res ipsa loquitur* instruction, that being the question of whether the instrumentality causing the harm is within the exclusive control of the defendant. It is unquestionable that the agent of the Spooner Hospital administering the enema had exclusive control over the tube and bulb through which the solution was introduced into plaintiff's rectum. However, the recent decision of *Hoven v. Kelble,* 79 Wis.2d 444, 256 N.W.2d 379 (1977) maintains that the use of the word "control" is not an accurate statement of the principle sought to be expressed. Quoted at length from that decision:

"Restatement of the Law, *Torts,* 2d, sec. 328D, does not speak in terms of control at all, but requires that 'other responsible causes . . . are sufficiently eliminated by the evidence.' Prosser, *Law of Torts,* sec. 39, pages 219–221 (4th ed. 1971), discusses the concept of 'exclusive control' as follows:
" '. . . It would be far better, and much confusion would be avoided, if the idea of "control" were discarded altogether, and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it.' " *Id.* at 452–53.

The *res ipsa loquitur* concept of control is thus interpreted to preclude the instruction in medical malpractice actions where the injury can reasonably be attributed to a pre-existing condition, an allergic reaction or some other frailty in the plaintiff. *Hoven v. Kelble, supra; Trogun v. Fruchtman, supra; Crouix v. Hagan,* 221 N.W. 2d 748 (Iowa 1974) ; *George v. City of New York, supra; Morgensen v. Hicks,* 253 Iowa 139, 110 N.W.2d 563 (1961).

Mrs. Kelly at the time of the administration of the enema had a history of hemorrhoid disease. She had un-

dergone a series of GI examinations which could have caused irritation to her rectum. Medical testimony is required to support the theory that the probability of a hematoma being caused by the proper administration of the enema was remote. The plaintiff failed to submit evidence to overcome the accepted medical knowledge and testimony that the proper administration of the enema combined with the existing hemorrhoid condition did not set up an adverse reaction causing the hematoma. Thus the plaintiff has not created a jury question that the instrumentality causing the harm was within the exclusive control of the defendant. Accordingly, we hold the plaintiffs have not submitted evidence which would support the granting of the *res ipsa loquitur* instruction.

As a second issue, the plaintiffs allege a miscarriage of justice arising out of their surprise at the failure of the trial court to submit the *res ipsa loquitur* instruction. They maintain that had they known the court would entertain motions after the close of their case-in-chief they would have solicited testimony from the Chairman of the Nursing Department of the Spooner hospital and Dr. Matzke. While we sympathize with the plight of an attorney who has not called all available witnesses, we do not believe there is a justifiable basis to the plaintiffs' claim of surprise, when the plaintiffs have closed their case and the court, according to proper trial procedure, entertains timely motions.

The appellate court's exercise of its discretionary power in granting new trials should be used sparingly and only when it is obvious that based upon the testimony, the interests of justice require a new trial. *Kablitz v. Hoeft,* 25 Wis.2d 518, 131 N.W.2d 346 (1964). The determination of whether to submit a *res ipsa loquitur* instruction is a question of law to be decided by the court.

*Mercado v. County of Milwaukee, supra* at 786. As there has been no evidence which would support an inference of negligence, the trial court properly decided not to submit the instruction. While the introduction of additional testimony may have attempted to show a specific act of negligence, plaintiffs' counsel nevertheless failed to move to re-open the testimony. Under these facts and the law applicable thereto we do not grant a new trial based upon the trial court's action in refusing the *res ipsa loquitur* instruction when the plaintiff has not established a justifiable basis for it.

*By the Court.*—Judgment affirmed.