STATE of Wisconsin, Plaintiff-Respondent,

v.

Stephen SEREBIN, Defendant-Appellant.†

Court of Appeals

*No. 82–232–CR. Submitted on briefs January 17, 1983.—
Decided July 26, 1983.*

† Petition to review granted.

For the appellant the cause was submitted on the briefs of *Robert E. Sutton* of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Kirbie Knutson*, assistant attorney general.

Before Foley, P.J., Dean and Cane, JJ.

FOLEY, P.J. Stephen Serebin, a nursing home administrator, was convicted of homicide by reckless conduct, party to a crime, secs. 940.06[1] and 939.05, Stats;

---

[1] Section 940.06, Stats., provides:

Homicide by reckless conduct. (1) Whoever causes the death of another human being by reckless conduct is guilty of a Class C felony.

(2) Reckless conduct consists of an act which creates a situation of unreasonable risk and high probability of death or great bodily harm to another and which demonstrates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury. It is intended that this definition embraces all of the elements of what was heretofore known as gross negligence in the criminal law of Wisconsin.

and twelve counts of neglect of nursing home residents,[2] party to a crime, secs. 940.29(7)[3] and 939.05, Stats.[4] Because the state failed to prove that Serebin's conduct caused a death or caused harm to any nursing home resident, we reverse the convictions and remand this matter to the trial court with directions to vacate the judgment and dismiss the complaint.

The basis for the reckless homicide charge was that one of the residents left the nursing home and died of exposure to cold. The basis for the twelve neglect charges was that residents lost weight or developed bedsores. The state claims that Serebin caused the death, bedsores, and weight loss by failing to provide sufficient staff and adequate diet.[5]

---

[2] Although the information charged Serebin with knowingly permitting employees of a nursing home to neglect residents, the jury convicted him of neglect of nursing home residents.

[3] 940.29(7), Stats. (1975), provided:

Abuse of inmates of institutions. Any person in charge of or employed in any of the following institutions who abuses, neglects or ill-treats any person confined in or an inmate of any such institution or who knowingly permits another person to do so may be fined not more than $500 or imprisoned not more than one year in county jail or both:

. . . .

(7) A nursing home as defined in s. 50.02.

Section 940.29(7) has been changed and now provides:

Abuse of residents of facilities. Any person in charge of or employed in any of the following facilities who abuses, neglects or ill-treats any person confined in or a resident of any such facility or who knowingly permits another person to do so is guilty of a Class E felony:

. . . .

(7) A nursing home as defined in s. 50.01(3).

[4] The supreme court denied Serebin's petition to bypass the court of appeals and refused our certification of this appeal.

[5] We assume, for purposes of this opinion, that Serebin failed to provide sufficient staff and adequate diet.

To convict Serebin of any of the charged crimes, the state must prove beyond a reasonable doubt that a causal relationship existed between Serebin's conduct and the harm.[6] *See State v. McClose,* 95 Wis. 2d 49, 51–54, 289 N.W.2d 340, 341–42 (Ct. App. 1980); Wis JI—Crim 1160 (1962); Wis JI—Crim 1270 (1974).[7] Although a jury may draw reasonable inferences from the evidence, Serebin cannot be convicted on mere suspicion or conjecture. *See State ex rel. Kanieski v. Gagnon,* 54 Wis. 2d 108, 117, 194 N.W.2d 808, 813 (1972). Whether the evidence was sufficient to prove causation beyond a reasonable doubt is a question of law. *See Seraphine v. Hardiman,* 44 Wis. 2d 60, 65, 170 N.W.2d 739, 742 (1969). We independently review questions of law. *First National Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

Serebin was the administrator of the Glendale Convalescent Center when Bruno Dreyer, a resident, left the facility and died of exposure. He died between midnight and 3 a.m., when the temperature was between 8° and 15°F. His body was found outside the facility between 8 a.m. and 8:30 a.m., after the morning shift discovered that he was missing.

When Dreyer left the facility, there were only two aides and one nurse on duty for the 200 residents on three floors. An aide put Dreyer to bed at about midnight. She looked into the room from the corridor sometime later, and it appeared to her that Dreyer was in his bed. On the

---

[6] Criminal liability for all true crimes punishable by imprisonment rather than by small fines should be based exclusively on causation. *See* Sayre, *Criminal Responsibility for the Acts of Another,* 43 Harv. L. Rev. 689, 719 (1930).

[7] The state did not challenge the jury instruction that "neglect" includes an act or failure to act that causes suffering, misery, or physical harm to a person.

basis of information the aides gave her, a nurse made an entry on Dreyer's chart that the side rails on his bed were up, he was checked every two hours, there were no problems, and he slept well.

The jury could not reasonably infer from this evidence that Serebin's failure to provide sufficient staff, whatever number that may be, caused Dreyer's death. To meet its burden, the state had to prove at the very least that sufficient staff would have prevented Dreyer from leaving the facility unnoticed. The most favorable inference that can be drawn from the state's evidence is that a reasonable number of additional staff would have made it less probable that Dreyer could leave unnoticed. An unspecified degree of probability does not permit the inference of a fact beyond a reasonable doubt.

Also, even with efficient two-hour bed checks, Dreyer could have died of exposure before his absence was discovered. There is no indication of how quickly Dreyer died when exposed to the 8° to 15°F temperatures. For all the jury knew, Dreyer could have left the facility right after one bed check and died before the next bed check.

The state also did not prove a causal connection between the lack of staff and the bedsores and weight loss. There was undisputed testimony that there are many causes of bedsores and weight loss in elderly nursing home residents. Age, insufficiency of the venous or arterial systems, nutrition, albumin, the ability of certain body tissues to repair themselves, and chronic disability all influence the development of bedsores. Weight loss may result from metabolic problems despite normal food intake, and elderly people tend not to eat as well because of depression, a decrease in total number of taste buds, and denture problems. Because of the many possible medical

causes, the determination of the specific cause of bedsores or weight loss in an individual resident required special medical knowledge or experience, which we cannot presume the jury had. This required the state to prove by expert opinion testimony that the cause of each resident's bedsores and weight loss was Serebin's neglect in failing to hire sufficient staff or provide an adequate diet. *See Kelly v. Hartford Casualty Insurance Co.*, 86 Wis. 2d 129, 134–35, 271 N.W.2d 676, 679 (1978).

The expert testimony, even considered in the light most favorable to the convictions, left the question of cause to speculation. None of the experts examined any of the twelve residents with the bedsores or weight loss. No expert gave an opinion on a specific cause for a specific resident. No expert gave an opinion that any bedsore or weight loss was due to Serebin's neglect. The closest the state came to proving any cause was its expert testimony that bedsores should be preventable with sufficient and adequate nursing skill and vigilance. The focus of this testimony is not limited to staff numbers, the state's theory of the case, and it therefore neither proves Serebin's neglect as the specific cause nor does it disprove all other reasonably possible causes.

Testimony that bedsores should be preventable with sufficient and adequate nursing skill and vigilance merely proves that bedsores are the result of someone's neglect. As the state's own expert indicated, the frequent presence of bedsores suggests the likelihood of faulty nursing techniques or administration or insufficient staff. This testimony offers three possible causes of the bedsores, and there is no basis in the record for the jury to choose one cause rather than another. Even if a reasonable juror could reject the testimony of Serebin's medical doctor and believe the state's nurse experts that bedsores should not occur in the absence of someone's neglect, the evidence was not sufficient to permit the jury to infer

that the bedsores were caused by Serebin's neglect in failing to hire sufficient staff.[8]

*By the Court.*—Judgment reversed and cause remanded with directions.

[8] Because we are reversing the judgments, we do not decide the other issues raised by Serebin.