In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1377

JOHN C. CLIFFORD, III,

*Plaintiff-Appellant*,

*v.*

CROP PRODUCTION SERVICES, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 08-C-02094—**David G. Bernthal**, *Magistrate Judge*.

ARGUED OCTOBER 18, 2010—DECIDED NOVEMBER 29, 2010

Before POSNER and WOOD, *Circuit Judges*, and ADELMAN, *District Judge*.[1]

ADELMAN, *District Judge*.   In this negligence case involving Illinois substantive law, the district court granted the defendant's motion for summary judgment after excluding the plaintiff's expert witness and concluding that, without expert testimony, the plaintiff's claim failed

---

[1]  Hon. Lynn S. Adelman, of the Eastern District of Wisconsin, sitting by designation.

as a matter of law. The plaintiff appeals both the exclusion of his expert witness and the district court's grant of summary judgment. We affirm.

## I.

The plaintiff below and appellant here, John C. Clifford, III, farmed seed corn under a contract with Monsanto. In 2007, at Monsanto's direction, Clifford planted male and female strains of seed corn on three different fields. The male strains were labeled as being sensitive to two types of herbicides: sulfonylureas and pigment inhibitors. In early June, Clifford noticed weeds in the corn and asked Monsanto about potential herbicides he could use to control the weeds. Despite the corn's sensitivity to sulfonylureas and pigment inhibitors, a Monsanto representative told Clifford that there were no restrictions on the types of herbicides that could be applied to the corn. Clifford then contacted a supplier of herbicides, appellee Crop Productions Services, Inc. ("CPS"), and asked it to send a representative to his farm in order to view the weeds. A CPS representative viewed the weeds and recommended that Clifford use a custom blend of herbicides containing Steadfast, a brand-name sulfonylurea herbicide, and Callisto, a brand-name pigment-inhibitor herbicide.

Following CPS's recommendation, Clifford ordered four batches of the custom herbicide blend, which CPS mixed and dispensed to Clifford on three separate days. For each batch, CPS mixed the blend "on demand" and dispensed it to Clifford in a tank that CPS had loaned him for the

season. To mix the blend, CPS used a system that consisted of a large mixing tank connected by hoses to bulk bins of various agricultural products, including herbicides. CPS employees used a computerized mechanism to measure products from the bulk bins and convey them to the mixing tank. Any products not stored in the bulk bins were added by hand. When mixing was complete, the blend was dispensed through a hose into Clifford's tank.

Clifford transported each batch to his fields and used his own spray equipment to spray the seed corn. Within a week of spraying, Clifford began to notice damage to the corn. At least some of the corn on all three of Clifford's fields eventually died. At Monsanto's direction, Clifford destroyed all of the corn on one of the fields and a portion of the corn on a second field.

Clifford contacted CPS to discuss the damage to his corn. CPS, in turn, contacted a representative of Steadfast, who visited Clifford's fields and concluded that Steadfast caused the damage. Shortly after the Steadfast representative's visit, however, Pat Geneser, a Monsanto employee, visited Clifford's fields. After viewing the corn, Geneser began to suspect that the damage was caused by glyphosate, the active ingredient in Monsanto's Roundup herbicide. Geneser sent samples of the damaged corn to a laboratory, and after analysis the laboratory determined that the samples contained trace amounts of glyphosate—specifically, 1/76,000 of a full dose of glyphosate. After receiving the laboratory's results, Geneser inferred that CPS might have accidentally mixed Roundup into Clifford's custom blend. Clifford then filed

this suit against CPS, alleging negligence and breach of implied warranty. Clifford eventually dropped the implied warranty claim, leaving only the negligence claim.

CPS defended against the negligence claim on four grounds. First, it argued that it was the sulfonylurea and pigment-inhibitor herbicides in the custom blend that damaged Clifford's corn, not glyphosate. Second, it argued that even if Clifford could prove that glyphosate caused the damage, he could not prove that the custom blend was the source of the glyphosate. In this regard, CPS noted that Clifford's tank or spray equipment might have been contaminated with glyphosate. CPS also noted that someone near Clifford's fields may have used a glyphosate herbicide on his or her own crops, and that drift from the neighboring field may have been the source of the glyphosate detected in Clifford's corn. Third, CPS argued that even if the custom blend was the source of the glyphosate, Clifford could not prove that CPS had breached any duty of care when it prepared and dispensed the custom blend. Finally, CPS argued that even if Clifford could prove all the elements of his negligence claim, the claim would still fail as a matter of law because it was barred by the economic loss doctrine.

As discovery in the district court proceeded, the deadline for Clifford to disclose expert witnesses came and went without Clifford disclosing expert testimony in support of his claims. CPS thus moved for summary judgment, arguing that without an expert Clifford could not show either that his damages were caused by glyphosate, that CPS was the source of the glyphosate, or that CPS had

breached any duty. CPS also moved for summary judgment based on the economic loss doctrine.

In opposing CPS's motion, Clifford did not dispute that he had not disclosed any expert testimony. However, he took the position that Geneser's testimony was lay rather than expert testimony and that such testimony was sufficient to establish that glyphosate had caused the damage to his corn.[2] He further argued that expert testimony was not required to show that CPS had breached a duty of care because a trier of fact could infer from the presence of glyphosate in his corn that CPS had breached a duty to supply him with glyphosate-free herbicide.

The district court determined that Geneser's testimony was expert testimony that was inadmissible due to Clifford's failure to disclose it in accordance with Federal Rule of Civil Procedure 26(a)(2)(A).[3] The court then granted CPS's motion for summary judgment, reasoning that, without such testimony, Clifford could not establish the causation and breach of duty elements of his negligence claim.

---

[2] Actually, Clifford never argued to the district court that Geneser was a lay witness rather than an expert witness. He simply assumed that Geneser's testimony was lay testimony.

[3] Rule 26(a)(2)(A) provides in relevant part that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Rules 702 to 705 are the Federal Rules of Evidence that permit parties to offer expert testimony.

**II.**

On appeal, Clifford argues that the district court should not have granted summary judgment because Geneser's testimony as to causation was not expert testimony and because expert testimony is not needed to show that CPS breached a duty of care. He also argues that, even if Geneser's testimony was expert testimony that should have been disclosed under Rule 26(a)(2)(A), the district court abused its discretion by excluding such testimony, since the failure to properly disclose Geneser was harmless. *See* Fed. R. Civ. P. 37(c)(1) (providing that sanction of automatic exclusion of witness does not apply where failure to properly disclose witness was substantially justified or harmless).[4]

CPS argues that Clifford waived two of his arguments—that Geneser was a lay rather than expert witness and that, even if he was an expert witness, the failure to disclose him was harmless—by failing to raise them in the district court. *See, e.g., Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 470 (7th Cir. 2008) (holding that arguments not raised in district court are waived). In this court, Clifford does not respond to CPS's assertion of waiver, and thus we conclude that Clifford has waived any challenge to the district court's decision to exclude Geneser's testimony.

Nonetheless, even if we were to consider Geneser's testimony, we would affirm the district court's grant of

---

[4] Clifford does not argue that his failure to disclose Geneser as an expert witness was substantially justified.

summary judgment.[5] To survive summary judgment, Clifford needed to produce evidence permitting a reasonable trier of fact to find all of the elements of a negligence claim under Illinois law—duty, breach of duty, and causation. *See* Fed. R. Civ. P. 56(c)(2); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (listing elements of negligence claim under Illinois law). In the present case, that meant producing evidence permitting a reasonable trier of fact to find the following facts: (1) glyphosate caused Clifford's corn damage; (2) the source of the glyphosate was CPS's custom herbicide blend; and (3) had CPS exercised reasonable care, the custom herbicide blend would not have contained glyphosate. A trier of fact could have inferred from Geneser's testimony that glyphosate caused the corn damage, since Geneser testified that the damage he observed could not have been caused by anything other than glyphosate. (Geneser Dep. at 44.) However, as explained below, Geneser's testimony would not have supported the remaining two findings.

Regarding the source of the glyphosate, Geneser's testimony was that Clifford's corn could have come into contact with the herbicide in a number of different ways. Geneser's "best guess" was that CPS mistakenly incorporated Roundup into Clifford's custom blend during the mixing process. (Geneser Dep. at 91.) However, Geneser could not "rule out" other sources of glyphosate.

---

[5] We review this determination *de novo*. *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 733 (7th Cir. 2010).

He admitted that glyphosate could have been present in the tank that Clifford used to transport the blend to his fields or in the spray equipment that Clifford used to apply the blend. He also admitted that glyphosate could have drifted onto Clifford's crops after a farmer in the vicinity sprayed his or her own crops with a glyphosate herbicide, although he thought it "unlikely" that spray drift was the cause of the damage on all three of Clifford's fields. Most importantly, Geneser never testified that it was his opinion that CPS was the source of the glyphosate and admitted that his theory about CPS mistakenly incorporating Roundup into the custom blend was nothing more than speculation. Thus, a trier of fact could not reasonably infer from Geneser's testimony that CPS was the source of the glyphosate. *See Weigel v. Target Stores*, 122 F.3d 461, 468-69 (7th Cir. 1997) (stating that speculation, even by an expert, is no bar to summary judgment).

Moreover, even if we assumed that a trier of fact could infer from Geneser's testimony that CPS was the source of the glyphosate, Geneser did not offer any testimony concerning the remaining element of Clifford's claim—whether CPS breached a duty of care. Clifford does not dispute this, but argues that expert testimony was not needed to establish that CPS had failed to exercise due care. In Clifford's view, the standard of care required CPS to deliver an herbicide blend that contained only the chemicals that Clifford ordered—Steadfast and Callisto—and that therefore the trier of fact could infer from the presence of glyphosate in the blend that CPS had failed to use due care.

The problem with this argument is that Clifford has not offered evidence that would allow a reasonable trier of fact to conclude that the standard of care required CPS to ensure that the blend did not contain glyphosate. "Determining whether a defendant has failed to use due care to prevent an accident requires a comparison between the cost of the precaution that would have prevented it and the cost of the accident that occurred as a result of the absence of the precaution, discounted by the probability of an accident if the precaution was not taken." *Torrez v. TGI Friday's, Inc.*, 509 F.3d 808, 811 (7th Cir. 2007) (applying Illinois law). Thus, to prove negligence, Clifford was required to produce evidence identifying the precaution that CPS failed to take, the cost of that precaution, and the expected cost of the accident that the precaution was designed to prevent. However, Clifford offered no evidence on these issues. For all we know, glyphosate may not be particularly harmful in small doses (perhaps the specific strains that Clifford planted were unusually sensitive to glyphosate), and thus the expected cost of accidental glyphosate contamination may be low.[6] On the other side of the scale, it may be that the

---

[6] Clifford's attorney obviously thinks that glyphosate is extremely dangerous, even in small amounts. At oral argument, he compared glyphosate contamination to a pharmacist accidentally mixing arsenic into a prescription. But the statements of lawyers are not evidence, *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008), and we have been directed to no evidence in the record indicating that glyphosate is as dangerous to seed corn as Clifford's attorney thinks it is.

precautions an herbicide supplier would need to take to ensure that a blend contained no residual glyphosate whatsoever are extremely costly. If this were the case, then the standard of care would not have required CPS to take the precautions, because the cost of the precautions would have outweighed their expected benefit. In light of Clifford's failure to supply any evidence on these matters, no reasonable trier of fact could have found that CPS breached its duty of care.

Finally, we note that, in arguing that the trier of fact could have inferred negligence from the presence of glyphosate in his blend, Clifford seems to be invoking the doctrine of *res ipsa loquitur*. This doctrine "allows a plaintiff to prevail in a negligence case by showing that even if there is no direct evidence of negligence, the circumstances of the accident indicate that it probably would not have occurred had the defendant not been negligent." *Aguirre v. Turner Constr. Co.*, 582 F.3d 808, 810-11 (7th Cir. 2009) (applying Illinois law). Here, Clifford has no direct evidence indicating that CPS was negligent, and he wants the trier of fact to infer that glyphosate would not have been in his blend had CPS exercised reasonable care in mixing and dispensing his custom blend. But this is not a proper case for *res ipsa loquitur*. In a proper case, it must be obvious to the trier of fact that an accident of the type that injured the plaintiff rarely occurs in the absence of negligence. *Smoot v. Mazda Motors of Am., Inc.*, 469 F.3d 675, 679-80 (7th Cir. 2006). A typical example is where, after surgery, a plaintiff discovers that a surgeon's sponge was left inside his abdomen. *Id.* at 680. In such a case, the trier of fact

can infer without considering additional evidence that someone in the operating room was negligent. In the present case, however, it is not obvious that glyphosate rarely ends up in blends where it is not wanted unless the supplier has been negligent. As we explained above, absent contrary evidence, we have no reason to think that glyphosate contamination is such a serious problem that its occurrence signifies negligence. On the present record, it is just as likely that Clifford's corn was unexpectedly sensitive to levels of glyphosate that would have caused no harm to the vast majority of seed corn strains. Thus, before the trier of fact could have inferred from the trace amount of glyphosate in Clifford's corn that CPS had breached its duty of care, Clifford would have had to produce some evidence about the dangers of glyphosate contamination. Because he failed to do so, the district court properly granted CPS's motion for summary judgment.[7]

---

[7] Clifford elected to bring a negligence claim rather than a strict products liability claim, but for good measure we note that the result would have been the same had Clifford pressed a products liability claim. To prevail on such a claim, Clifford would have had to produce evidence from which the trier of fact could have determined that the presence of glyphosate in the blend made the blend "unreasonably dangerous." *See Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008). Again, since Clifford did not offer any evidence concerning the dangers of glyphosate contamination, this claim would have failed.

### III.

For the reasons stated, the judgment of the district court is

AFFIRMED.